**NOT FOR PUBLICATION**                                          **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
BOROUGH OF CARLSTADT,                               :
                                                    :          Civil Action No. 05-2771 (JAP)
              Plaintiff,                            :
                                                    :          **OPINION**
       v.                                           :
                                                    :
UNITED STATES ARMY CORPS OF                         :
ENGINEERS; COLONEL RICHARD J.                       :
POLO, JR.; MEADOWLAND MILLS/                        :
MACK-CALI LIMITED PARTNERSHIP;                      :
and NEW JERSEY MEADOWLANDS                          :
CONSERVATION TRUST                                  :
                                                    :
              Defendants.                           :
_____:


APPEARANCES:

Stuart J. Lieberman
Mara Epstein
LIEBERMAN & BLECHER, PC
10 JEFFERSON PLAZA
SUITE 100
PRINCETON, NJ 08540
(732) 355-1311

       *Attorneys for Plaintiff Borough of Carlstadt*

Sue Ellen Wooldridge
Acting Assistant Attorney General
Environment and Natural Resources Division
Eileen T. McDonough
Environmental Defense Section
UNITED STATES DEPARTMENT OF JUSTICE
Post Office Box 23986
Washington, D.C.  20026-3986
(202) 514-3126

Christopher J. Christie
UNITED STATES ATTORNEY
Susan Handler-Menahem
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ  07102
(973) 645-2843

 *Attorneys for Defendants United States Army Corps of Engineers and*
 *Colonel Richard J. Polo, Jr.*

Benjamin Clarke
DE COTIIS, FITZPATRICK, COLE & WISLER, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, NJ  07666
(201) 928-1100

 *Attorneys for Defendant Meadowlands Mills/Mack-Cali Limited Partnership*

Penny S. Cirrotti
STATE OF NEW JERSEY
P.O. Box 093
Trenton, NJ 08625
(609) 984-6811

 *Attorneys for Defendant New Jersey Meadowlands Conservation Trust*

PISANO, District Judge.

## I. INTRODUCTION

Plaintiff Borough of Carlstadt ("Plaintiff" or "Carlstadt") brought this action against the United States Army Corps of Engineers and Colonel Richard J. Polo, Jr. (collectively, the "Army Corps") as well as the Meadowlands Mills/Mack-Cali Limited Partnership ("Mills/Mack-Cali") and the New Jersey Meadowlands Conservation Trust (the "Conservation Trust"). Plaintiff purports to challenge both the issuance and the execution of a permit (the "Permit") issued by the Army Corps to Mills/Mack-Cali. The Permit allows Mills/Mack-Cali to fill 7.69 acres of wetlands and open waters of the United States in East Rutherford, New Jersey in connection with the construction of a shopping, entertainment, sports, lodging, and office development project called "Xanadu." (*See*, *e.g.*, Compl. ¶¶ 10-16). Further, according to Plaintiff, the Permit contains a specific condition requiring permanent preservation of property within the Borough of Carlstadt known as the "Empire Tract." (Compl. ¶ 102).

Plaintiff alleges, *inter alia*, that the Army Corps violated the National Environmental Policy Act ("NEPA"), Section 404 of the Clean Water Act ("CWA"), Section 10 of the Rivers and Harbors Act ("RHA"), as well as applicable regulations promulgated under each of the foregoing statutes, and the Administrative Procedure Act (the "APA") in connection with the issuance of the Permit. (Compl. First - Eighth Causes of Action). Plaintiff also alleges that conduct of Mills/Mack Cali and the Conservation Trust violated the specific condition of the Permit requiring permanent preservation of the Empire Tract and was unlawful under laws of the State of New Jersey. (Compl. Ninth Cause of Action). Plaintiff requests declaratory and

3

injunctive relief as well as costs, expenses, and attorneys' fees.[1]  (Compl. at 35-36).

The Army Corps moved to dismiss the Complaint, arguing that Plaintiff lacks standing to bring the federal statutory claims asserted.  Mills/Mack-Cali and the Conservation Trust each answered the Complaint.  This Court has jurisdiction under 28 U.S.C. § 1331.  The Court resolves the motion on the papers without oral argument pursuant to Fed. R. Civ. P. 78.

For the reasons expressed below, the Court finds that Plaintiff has failed to establish that it has prudential standing to maintain its causes of action alleging violations of federal statutes and, consequently, the First through Eighth Causes of Action must be dismissed.  Further, the Ninth Cause of Action must be dismissed because Plaintiff cannot proceed under 33 U.S.C. § 1365 and because the Court declines to exercise supplemental jurisdiction over this claim to the extent it alleges violation of state law.   Accordingly, Plaintiff's Complaint is dismissed with prejudice and this case is closed.

---

[1] Plaintiff seeks:  (1) declarations that the Army Corps's actions in issuing the Permit were arbitrary and capricious, that the Army Corps violated the federal environmental statutes under which Plaintiff purports to sue, that the Permit is null and void, that Mills/Mack Cali failed to meet the conditions of the Permit requiring permanent preservation of the Empire Tract, and that the actions of the Conservation Trust are *ultra vires* and must be voided because it accepted title to the Empire Tract that allows for future development; (2) orders requiring the Army Corps to complete a NEPA environmental impact statement and staying the Permit until its is completed, remanding the Permit to the Army Corps to provide opportunity for public comment, requiring the Army Corps to complete a "full and proper" alternatives analysis avoiding or minimizing wetlands fill, and requiring the Army Corps to complete an "adequate and proper" public interest review under the RHA; and (3) injunctions suspending and ultimately prohibiting activities authorized by the Permit and requiring Mills/Mack Cali to restore any wetlands or open waters filled pursuant to the Permit.  (Compl. at 35-36).

## II.  BACKGROUND

The Xanadu project is a mixed-use redevelopment of the Continental Airlines Arena site in the New Jersey Meadowlands at the Meadowlands Sports Complex in the Borough of East Rutherford, New Jersey.  (Compl. ¶ 10-11, 16).  The New Jersey Meadowlands is an environmentally sensitive area for which New Jersey has enacted legislation seeking to preserve the delicate environmental balance.  (Compl. ¶¶ 18-22).  The New Jersey Meadowlands encompass approximately 32 square miles and extend into 14 municipalities in New Jersey, including the Borough of East Rutherford and Plaintiff Borough of Carlstadt.  (Compl. ¶ 17).

Carlstadt is located immediately adjacent to the Xanadu development site.  (Compl. ¶ 3).  In addition, Carlstadt contains the "Empire Tract," which is "an ecologically sensitive parcel of property" comprising approximately 557 acres.  (Compl. ¶ 102; Pltf's Br. at 2).  According to the Army Corps, the Empire Tract is almost entirely wetlands.  (Army Corps Br. at 6 (citing 36 N.J.R. 1033 (Feb. 17, 2004))).  In its Opposition to the Army Corps's Motion to Dismiss, Plaintiff alleges that the Empire Tract had been the subject of a redevelopment agreement with Mills/Mack-Cali for a "megamall," which project was abandoned by Mills/Mack-Cali in favor of the Xanadu project at the Continental Airlines Arena site.  (Pltf.'s Opp. Br. at 2-3).

The New Jersey Sports and Exposition Authority ("NJSEA") owns and operates the Meadowlands Sports Complex, including the Continental Airlines Arena site on which Xanadu's construction is planned.  (Compl. ¶ 22, 49).  In February 2003, NJSEA selected Mills/Mack-Cali from among competing developers to redevelop the Continental Airlines Arena site pursuant to the Xanadu proposal.  (Compl. ¶ 48).  On December 3, 2003, NJSEA and Mills/Mack-Cali entered into a redevelopment agreement setting forth terms under which Mills/Mack-Cali would

develop the Xanadu project (the "Redevelopment Agreement").  (Compl. ¶ 49).  As proposed, the Xanadu project is a $1.3 billion, 4.96 million square foot shopping, sports, entertainment, hotel, and office complex.  (Compl. ¶ 50).  As part of the Redevelopment Agreement, as amended, Mills/Mack-Cali agreed to preserve the Empire Tract property located in Carlstadt. (Compl. ¶ 102).

Construction of Xanadu as proposed will require filling of 7.69 acres of federal wetlands and open waters.  (Compl. ¶ 60).  Since the wetlands and open waters at issue appear to be subject to the jurisdiction of the Army Corps, Mills/Mack-Cali was required to apply for a fill permit pursuant to § 404 of the CWA and § 10 of the RHA.  (Compl. ¶ 60).

Mills/Mack-Cali applied to the United States Army Corps of Engineers for a permit to fill the 7.69 acres of wetlands on the proposed Xanadu development site in June 2003, and amended its application in May 2004.  (Compl. ¶¶ 12, 61-62).  The Army Corps accepted public comments from July 27, 2004 through September 22, 2004[2], and held a public hearing on August 26, 2004. (Compl. ¶ 63).

On March 18, 2005, the Army Corps issued the Permit to Mills/Mack-Cali authorizing the fill of the 7.69 acres of wetlands, concluding that the proposed filling would not "significantly [affect] the quality of the human environment" and that an environmental impact statement pursuant to NEPA[3] would not be required.  (Compl. ¶¶ 12, 68, 69 (citing MR at 118)

---

[2] The public comment period was scheduled to end on September 7, 2004, but was extended to September 22, 2004.  (Compl. ¶ 63).

[3] NEPA requires federal agencies to prepare analyses in assessing the effects of agency action.  If, after preparing an "Environmental Assessment", an agency determines that a proposed action is a "major federal action[] significantly affecting the quality of the human environment," the agency must prepare an "Environmental Impact Statement".  *See* 40 C.F.R. §§ 1501.3,

(alteration in Compl.)).  A specific condition of the Permit requires permanent preservation of the

Empire Tract.  (Compl. ¶ 102, 104; Pltf's Br. at 2).  Mills/Mack Cali transferred ownership of the

Empire Tract to the Conservation Trust by deed dated March 16, 2005.  (Compl. ¶ 105).

## III.  DISCUSSION

Plaintiff's first eight causes of action allege that actions of the Army Corps in issuing the

Permit violated federal statutes and corresponding regulations.  Specifically, Plaintiff alleges in

relevant part that the Army Corps violated Sections 404(a) and 404(b)(1) of the CWA, 33 U.S.C.

§ 1344(a),(b)(1) (First through Fourth Causes of Action), NEPA, 42 U.S.C. § 4332(2)(C), (Fifth

and Sixth Causes of Action), and Section 10 of the RHA, 33 U.S.C. § 403 (Seventh Cause of

Action), and the Adminsitrative Procedure Act, 5 U.S.C. § 706(2) (Eighth Cause of Action).

Further, Plaintiff alleges that each alleged violation of the CWA, NEPA, and RHA should be

held unlawful and set aside under the Adminsitrative Procedure Act, 5 U.S.C. § 706(2).  (Compl.

¶¶ 114, 122, 126, 131, 137, 141, 148, 151).  The Army Corps's motion to dismiss argues that

Plaintiff lacks standing to maintain the First through Eighth Causes of Action alleging violations

of federal statutes by the Army Corps.  For the reasons discussed below, the Court finds that

Plaintiff lacks standing to maintain the First through Eighth Causes of Action and, accordingly,

grants the Army Corps's motion to dismiss.

Plaintiff's Ninth Cause of Action does not appear to assert a claim against the Army

Corps.  Rather, the Ninth Cause of Action alleges that conduct of Mills/Mack Cali and the

---

1501.4(c), 1501.4(e); 42 U.S.C. § 4332(2)(C); *see also Dunn v. U.S.*, 842 F.2d 1420, 1427 (3d
Cir. 1988).  If, however, that agency determines that the proposed action will not have a
significant impact, the agency must set forth its reasons in a Finding of No Significant Impact.
*See* 40 C.F.R. §§ 1501.3, 1501.4(c), 1501.4(e), 1508.13; *see also Dunn*, 842 F.2d at 1427.

Conservation Trust violated a specific condition of the Permit requiring permanent preservation of the Empire Tract and was unlawful under the laws of the State of New Jersey.  As addressed below, although Defendants Mills/Mack-Cali and the Conservation Trust have not filed motions to dismiss, the Court must likewise dismiss the Ninth Cause of Action because Plaintiff cannot proceed under 33 U.S.C. § 1365 and because the Court declines to exercise supplemental jurisdiction over the aspects of this claim premised upon state law.

### A.   Plaintiff's First Through Eighth Causes of Action Must Be Dismissed

#### 1.  Standard of Review

The Army Corps's objection to Plaintiff's standing is a challenge to the Court's subject matter jurisdiction and is brought as a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *See*, *e.g.*, *Storino v. Borough of Point Pleasant*, 322 F.3d 293, 296 (3d Cir. 2003); *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000).

For purposes of ruling on a motion to dismiss challenging standing, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Storino*, 322 F.3d at 296; *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations and citations omitted) (alterations omitted).  However, "the Court can consider affidavits attached to the moving papers or even require such affidavits to be submitted." *New Hope Books*, 82 F. Supp. 2d at 324 (citations omitted).  "If, after this

opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth*, 422 U.S. at 501-02.

Plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561).

## 2. Legal Framework

Standing "subsumes a blend of constitutional requirements and prudential considerations."[4] *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).

In the context of a challenge to agency action, such as that made in the First through Eighth Causes of Action in Plaintiff's Complaint[5], to determine whether a plaintiff has prudential

_____

[4] The "irreducible constitutional minimum of standing" requires:  (1) an injury in fact, (2) that the injury is fairly traceable to the challenged action, and (3) that the injury is likely to be redressed by a favorable decision.  *See Lujan*, 504 U.S. at 560-61.  The prudential requirements are:  (1) the plaintiff must assert its own legal rights and interests; (2) the plaintiff must not be asserting a generalized grievance; and (3) the plaintiff's injuries must fall within the zone of interests of the statutes at issue.  *Society Hill Towers Owners' Assoc. v. Rendell*, 210 F.3d 168, 177-78 (3d Cir. 2000); *see also Elk Grove United Sch. Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 2308 (2004).  The prudential rules of standing aid the court in determining whether a particular plaintiff is the proper party to invoke judicial resolution of the specific dispute.  *Mariana v. Fisher*, 338 F.3d 289, 204 (3d Cir. 2003).

[5] Plaintiff asserts each of the first eight causes of action under § 706(2) of the APA, entitled "Scope of Review."  Section 706 provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing

9

standing, a reviewing court must consider "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  *Bennett v. Spear*, 520 U.S. 154, 175 (1997); *see also Oxford Assocs. v. Waste System Authority of Eastern Montgomery County*, 271 F.3d 140, 146 (3d Cir. 2001); *Township of Belleville v. Federal Transit Administration*, 30 F. Supp. 2d 782, 790 (D.N.J. 1998).  This requirement stems from § 702 of the APA,  entitled "Right of Review", which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702 (2005); *see, e.g., Township of Belleville*, 30 F. Supp. 2d at 790.  "The 'relevant statute' refers to the statute 'whose violation is the gravamen of the complaint.'"  *Township of Belleville*, 30 F. Supp. 2d at 791 (*quoting Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 886 (1990)).  Further, a reviewing court should consider the "particular provision of law upon which the plaintiff relies" rather than "the overall purpose of the Act in question."  *Bennett*, 520 U.S. at 175.  Finally, where, as here, "the plaintiff is not the subject of

---

court shall–
**(1)** compel agency action unlawfully withheld or unreasonably delayed; and
**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--
**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
**(B)** contrary to constitutional right, power, privilege, or immunity;
**(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
**(D)** without observance of procedure required by law;
**(E)** unsupported by substantial evidence in a case subject to section 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (2005).

the contested regulatory action, the test denies a right of review if the plaintiff's interests are so

marginally related to or inconsistent with the purposes implicit in the statute that it cannot

reasonably be assumed that Congress intended to permit the suit." *Ashley Creek Phosphate Co.*

*v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) (internal quotations and citation omitted).

### 3.   The Alleged Interests that Plaintiff Seeks to Protect

In the Complaint, Plaintiff alleges the following as its injuries:  "[t]he recreational,

aesthetic, and conservation interests of Plaintiffs' members will be directly and adversely

affected by the Xanadu Project" and "Plaintiffs' members will also be adversely affected by the

increased traffic and air pollution expected to result from this project."  (Compl. 4).  In its

Motion to Dismiss, the Army Corps argued that Plaintiff's allegations in the Complaint are

insufficient to establish standing because Plaintiff did not allege any injury to its own interests,

but instead alleged injury to its "members", and a municipality cannot assert standing based on

*parens patriae* or the doctrine of associational standing.  In its Opposition to the Army Corps's

Motion to Dismiss, Plaintiff does not dispute the Army Corps's arguments.  Rather, Plaintiff

expressly abandons its reliance on these purported injuries to its "members" and instead

enumerates alternative theories of alleged injuries to its own interests.  (See Pltf's Opp. Br. at 7-

8, 9).

In Plaintiff's Opposition, Plaintiff asserts that its "actual," "concrete and particularized"

injuries to its own interests are that in excess of $1.7 million has been taken from Carlstadt's tax

roll without any compensation or benefit to Carlstadt, creating 'a hole that must be filled through

taxing, borrowing, or cutting, or a combination; that Xanadu will "increase the need for

emergency services, with [Carlstadt] having to shoulder the additional costs for these services";

and that approximately $14 million to $21 million in anticipated future tax revenues will not come to fruition because Mills/Mack-Cali has abandoned any interest in developing a megamall on the Empire Tract in favor of the Xanadu project.  (Pltf's Opp. Br. at 2-4, 8).  All of Plaintiff's injuries are, therefore, fundamentally economic in nature.

According to Plaintiff, prior to the transfer of the Empire Tract to the Conservation Trust for permanent preservation pursuant to a specific condition of the Permit, the Empire Tract had a total assessed value of $70,216,100.  (Pltf's Br. at 3).  At that assessed value, the Empire Tract was expected to generate more than $1.7 million per year in tax revenue.  (Pltf's Br. at 1).  Because the Empire Tract has been transferred to the Conservation Trust for permanent preservation, it has been removed from Carlstadt's tax rolls and reclassified as tax exempt.  (Pltf's Br. at 3; Ranone Cert. ¶¶ 8-9).  Plaintiff alleges that the Army Corps's permit directly resulted in the loss of approximately $1.7 million per year in tax revenue that "will become the burden of the taxpayers" of Carlstadt and "that can equate to cuts in services, loss of jobs, and increased taxes."  (Pltf's Opp. Br. at 1, 3, 8).

In addition, Plaintiff alleges that the Empire Tract was previously the subject of a development agreement between Carlstadt and Mills/Mack-Cali calling for the development of a "megamall" on that site, which project has since been abandoned by Mills/Mack-Cali.  (Pltf's Opp. Br. at 2).  That project was expected to generate approximately $14 million in tax revenue in year one, and $21 million per year in tax revenue at full build-out.  (Pltf's Opp. Br. at 2-4).  Plaintiff asserts that "[o]n the anticipation of the project being built within Carlstadt, along with the tax revenue that the project would produce, [Carlstadt] approved and construction has begun on a new school costing approximately $24 million."  (Pltf's Opp. Br. at 4).  Further, Plaintiff

alleges that resident taxpayers must now "subsume the costs of the school alone subsequently causing further substantial tax increases" because the Mills/Mack-Cali megamall project will now not be built in Carlstadt.  (Pltf's Opp. Br. at 4).

Finally, Plaintiff alleges that Carlstadt's volunteer fire department and ambulance corps will be strained, potentially both endangering proper coverage of Carlstadt's existing community and costing Carlstadt in excess of $500,000 annually to increase patrols, because the major ingress and egress routes for Xanadu are within Carlstadt and Xanadu is estimated to receive 20 million visitors per year.  (Pltf's Opp. Br. at 4-5).

Because Plaintiff abandons any reliance on the injuries to its "members" asserted in the Complaint and fails to rebut the Army Corps' arguments that such allegations are insufficient to confer standing, the Court will consider only the alleged injuries to Plaintiff's own interests made by Plaintiff in its opposition brief.  While Plaintiff failed to make these allegations in the Complaint, amendment of the Complaint to include such allegations would be futile because these allegations do not demonstrate standing.  *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297 (3d Cir. 2003); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

### 4. Plaintiff Failed to Establish that Its Alleged Injuries Fall Within the Zones of Interests of the Federal Statutes at Issue

Plaintiff has failed to show that the interests it seeks to protect are within the zones of interests protected by NEPA, Section 404 of the CWA, or Section 10 of the RHA.

#### a. The National Environmental Policy Act

NEPA states:

> The purposes of this chapter are:  To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality.

42 U.S.C. § 4321(a) (2005); *see also Township of Belleville*, 30 F. Supp. 2d at 791.  Toward that end, NEPA requires, in relevant part, "that federal agencies assess the effects of proposed major federal actions on the human environment."  *Id.*  By imposing "a substantive obligation upon all federal agencies to balance the environmental considerations and goals of the Congress along with the traditional factors of public interest particular to each agency's mandate", *Township of Belleville*, 30 F. Supp. 2d at 791 (quotations and citations omitted), NEPA focuses "national policymaking on the interdependence between human beings and the environment", *Dunn v. U.S.*, 842 F.2d 1420, 1426 (3d Cir. 1988).  NEPA is essentially a procedural statute and does not require an agency to reach a particular result.  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-51 (1989).  Regulations promulgated by the Council on Environmental Quality, 40 C.F.R. 1500-08, govern the application of NEPA.  *See id.*, 490 U.S. at 355-56.

"The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions." *Nevada Land Action Ass'n v. United States Forest Service*, 8 F.3d 713, 716 (9th Cir. 1993); *see also Ashley Creek Phosphate*, 420 F.3d at 939 (stating that NEPA "is directed at environmental concerns, not at business interests"). Accordingly, "to assert a claim under NEPA, a plaintiff must allege injury to the environment; economic injury will not suffice." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agriculture*, 415 F.3d 1078, 1102-03 (9th Cir. 2005); *see also Ashley*

14

*Creek Phosphate*, 420 F.3d at 940 (indicating that the zone of interests that NEPA protects have long been described as environmental and that "purely economic interests do not fall within NEPA's zone of interests").   Because Plaintiff "has failed to allege any connection to injury to the physical environment, its injury falls outside of NEPA's zone of interests." *Ranchers Cattlemen Action Legal Fund*, 415 F.3d at 1104.  Plaintiff does not claim "to be protecting an interest that is even remotely intertwined with the environment." *Ashley Creek Phosphate*, 420 F.3d at 940.  Rather, as enumerated above, the interests that Plaintiff seeks to protect are fundamentally economic in nature:  each of Plaintiff's alleged injuries is premised upon anticipated losses of tax revenues or increases in expenditures.  Plaintiff does not allege "an environmental injury such as to an aesthetic or recreational interest in a particular place, animal, or plant species." *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Because Plaintiff asserts purely economic injuries, Plaintiff does not have standing to challenge the Army Corps's action under NEPA. *See Town of Stratford v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002).

Plaintiff attempts to cure this deficiency by alleging in the section of its Opposition Brief addressing the zone of interests requirement that Xanadu will generate traffic that will render Carlstadt's roadways "congested" and "unsafe", will result in "inefficient travel", and will jeopardize the "safety and welfare of Carlstadt property owners."  (Pltf.'s Br. at 10-11).  Plaintiff argues that "traffic impacts are one of the environmental considerations that an agency must examine when reviewing a proposed project under NEPA" and that the Army Corps did not comply with NEPA because it inadequately considered traffic impacts that will result from Xanadu.  (*Id.*).  Plaintiff's attempt to rely on traffic impacts in connection with its "zone of

interests" argument is inapt.  In identifying its alleged injuries in fact to its own interests, Plaintiff made clear that Plaintiff's real interest in traffic is that traffic may cause Carlstadt to incur additional expenses because of a potential increase in need for emergency services in Carlstadt.  (*See* discussion *supra*; Pltf's Opp. Br. at 2-4, 8).  Thus, while Plaintiff emphasizes traffic impacts in its argument, the interest it seeks to protect remains fundamentally economic.

NEPA "cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant." *Town of Stratford, Connecticut  v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002).  Plaintiff's Opposition Brief indicates that Plaintiff's real complaints are that, instead of developing a megamall on Carlstadt's "ecologically sensitive" Empire Tract, which is comprised almost entirely of wetlands, Mills/Mack-Cali is developing the Xanadu project in East Rutherford and has caused the Empire Tract to be transferred to the Conservation Trust for preservation, all of which is alleged to negatively impact Carlstadt's finances.  Plaintiff has revealed no interest in protecting any purported environmental injury and thus cannot use NEPA to attack the Defendants.  *Id.*

Accordingly, Plaintiff's claims asserted pursuant to NEPA must be dismissed.

### b. *Section 404 of the Clean Water Act*

The CWA establishes a comprehensive framework designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a) (2005). To achieve this objective, the CWA prohibits the discharge of pollutants into navigable waters, which is defined to include certain wetlands, unless authorized by a CWA § 404 permit.  33 U.S.C. §§ 1311(a), 1362(7) (2005); 33 C.F.R. § 328.3(a),(b); *see also Bayou des Familles Dev. Corp. v. U.S. Corps of Engineers*, 541 F. Supp. 1025, 1035 (E.D. La. 1982) ("Under the [CWA],

16

the [Army] Corps has the right to control the disposal of dredged material upon freshwater as well as tidal wetlands.").  Consistent with the purpose of the CWA, "[t]he permit program established under Section 404 . . . was intended to control the degradation of aquatic resources that results from any replacement of water with fill material, as well as the degradation that results from the discharge of dredged or fill material which contains toxic substances." *Bayou des Familles Dev. Corp. v. U.S. Corps of Engineers*, 541 F. Supp. 1025, 1036 (E.D. La. 1982) (citing S.Rep. No. 95-370, 95th Cong., 1st Sess. (1977), at 74-75, reprinted in (1977) U.S. Code Cong. & Ad. News 4326, 4399-4400).  The Army Corps is the agency authorized to regulate discharges of dredged and fill materials into wetlands through the issuance of § 404 permits.[6]  33 U.S.C. § 1344.

Plaintiff's alleged injuries do not fall within the zone of interests of § 404 of the CWA. As discussed, Plaintiff's interests are purely economic.  Plaintiff's claims do not address the quality of aquatic resources or the protection of wetlands.  Indeed, Plaintiff's asserted injuries have nothing to do with water at all, but rather concern only Plaintiff's interest in protecting its finances.  Reference to Plaintiff's essential grievances clarifies that prevention of degradation of water resources is not an interest that Plaintiff seeks to advance in this litigation:  that Mills/Mack-Cali is developing Xanadu on the Continental Airlines Arena site in East Rutherford instead of developing a megamall in Carlstadt on the Empire Tract, an "ecologically sensitive

---

[6] CWA regulations establish a case-by-case review process for the issuance of individual permits that involves site-specific documentation and review, opportunity for public hearing, public interest review, and a formal determination.  *See* 33 C.F.R. Pts. 323, 325.  In addition, individual permit applications are subject to a public interest review by the Army Corps, in which environmental an other considerations are examined, and which includes an opportunity for public comment.  *See* 33 C.F.R. §§ 320.4(a), 325.3.

parcel of property" consisting almost entirely of wetlands, and that, because the Empire Tract has been transferred to the Conservation Trust for permanent preservation, it is no longer eligible for development and the tax revenues that may generate.  That the Continental Airlines Arena site on which Xanadu is being developed contains 7.69 acres of wetlands is irrelevant to Plaintiff's interests; Plaintiff's Opposition Brief makes clear that Plaintiff simply does not want Xanadu constructed in East Rutherford because that project allegedly threatens Carlstadt's financial interests.

Plaintiff's only argument that its interests are within the zone of interests of § 404 of the CWA is that the CWA and its regulations indicate that economic values, safety, the needs and welfare of the people, and tax revenues are among the factors that the Army Corps may consider. (Pltf.'s Br. at 11).  However, the fact that the analysis that the Army Corps undertakes during its decision-making process may be far-reaching in scope, and may even include economic concerns among the factors considered, does not change the basic principle that Congress enacted this law to protect the public interest in the waters of the United States.  *See Town of Stratford, Connecticut*, 285 F.3d at 88-89.

Accordingly, Plaintiff's claims asserted pursuant to § 404 of the CWA must be dismissed.

### c.  Section 10 of the Rivers and Harbors Act

Section 10 of the RHA requires that a permit issued by the Army Corps be obtained prior to the construction of any obstructions to navigation in the navigable waters of the United States.[7] 33 U.S.C. § 403 (2005); 33 C.F.R. §§ 329.4, 320.2(b).  The purpose of § 10 of the RHA is to

---

[7] As with CWA Section 404 permits, Army Corps regulations detail the permit application review process.  *See* 33 C.F.R. Pt. 325.

"prohibit[] any activity affecting the course, condition, location or capacity of any navigable water unless authorized by a permit issued by the [Army] Corps." *Bayou des Familles*, 541 F. Supp. at 1032; *see also United States v. Ohio Barge Lines, Inc.*, 432 F. Supp. 1023, 1027 (W.D. Pa. 1977) (indicating that purpose of § 10 of the RHA is to prohibit unauthorized obstructions to navigable waters so as to remove obstructions to interstate and foreign commerce); *Potomac River Ass'n, Inc. v. Lundeberg Maryland Seamanship School, Inc.*, 402 F.Supp. 344 (D. Md. 1975) (indicating that the purpose of § 10 of the RHA is to prohibit obstructions in navigable waters and protect navigation).

Plaintiff's alleged injuries do not fall within the zone of interests of § 10 of the RHA. Plaintiff does not allege that the fill of the 7.69 acres of wetlands authorized by the Permit will adversely impact navigable waters or that Plaintiff will be injured as a result of any such impact. In fact, Plaintiff's claims do not address concerns relating to the navigability of any water resource. Further, as discussed above, Plaintiff's asserted injuries have nothing to do with water at all. Plaintiff's argument that its interests fall within the zone of interests of § 10 of the RHA is the same as that made in connection with the § 404 CWA, discussed *supra*, and must be rejected for the same reason: although the Army Corps's analysis may be far-reaching in scope, Congress enacted this law to protect the public interest in navigability of the waters of the United States. *See Town of Stratford, Connecticut*, 285 F.3d at 88-89.

Accordingly, Plaintiff's claims asserted pursuant to § 10 of the RHA must be dismissed.

### 5. Conclusion

Because Plaintiff has failed to show that the interests it seeks to protect are within the zones of interests protected by NEPA, Section 404 of the CWA, or Section 10 of the RHA,

Plaintiff lacks prudential standing to maintain the First through Eighth Causes of Action.

Consequently, Plaintiff's First through Eighth Causes of Action must be dismissed.

### B.  **Plaintiff's Ninth Cause of Action Must Be Dismissed**

Unlike the First through Eighth Causes of Action, Plaintiff's Ninth Cause of Action does

not allege that conduct of the Army Corps violated various federal statutes.  Rather, Plaintiff's

final Cause of Action alleges that conduct of Mills/Mack Cali and the Conservation Trust

violated a specific condition of the Permit requiring permanent preservation of the Empire Tract

and was unlawful under the laws of the State of New Jersey.  First, Plaintiff alleges that a specific

condition of the Permit requires that the Empire Tract be subjected to a perpetual deed restriction

guaranteeing its preservation.  Plaintiff argues that because the deed transferring ownership of the

Empire Tract from Mills/Mack-Cali to the Conservation Trust contains a provision allegedly

allowing for development depending on "unforeseen or changed circumstances", Mills/Mack-

Cali has failed to fulfill the obligations of the Permit.  (Compl. ¶¶ 152-53, 161).  Further,

Plaintiff also argues that the provision in the deed for "unforeseen or changed circumstances" is

contrary to the purpose and understanding of the transfer as stated in correspondence between

Mills/Mack-Cali and the Conservation Trust, and, therefore, that "there is no 'meeting of the

minds'" between Mills/Mack-Cali and the Conservation Trust.  (Compl. ¶¶ 153-60).  Finally,

Plaintiff alleges that the deed is contrary to the statutory laws and the public policy of the State of

New Jersey and that, consequently, the Conservation Trust's acceptance of the deed is *ultra*

*vires*.  (Compl. ¶¶ 158-59).  In connection with the Ninth Cause of Action, Plaintiff appears to

seek, *inter alia*, a declaration that Mills/Mack-Cali failed to meet the conditions of the permit

requiring permanent preservation of the Empire Tract and a declaration that the actions of the

Conservation Trust are *ultra vires* and must be voided because it accepted title to the Empire Tract that allows for future development.

To the extent that Plaintiff's Ninth Cause of Action alleges that Mills/Mack-Cali has failed to fulfill the obligations of the Permit, Plaintiff's Ninth Cause of Action must be dismissed.  (Compl. ¶¶ 152-53, 161).  As noted above, the Permit was issued pursuant to § 404 of the CWA, 33 U.S.C. § 1344.  Under circumstances such as that presented here, it appears that the CWA may not permit a private right of action against a private defendant for alleged violations of the terms or conditions of a permit issued under § 404 of the CWA, 33 U.S.C. § 1344.  *See Northwest Environmental Defense Center v. U.S. Army Corps of Engineers*, 118 F. Supp. 2d 1115 (D. Or. 2000) (citing 33 U.S.C. § 1365(a)); *see also Jones v. Rose*, No. 00-1795, 2005 WL 2218134, at *23 n.9 (D. Or. Sept. 9, 2005) (discussing conflicting authority and noting that "[a]lthough the Court concludes Plaintiff does not have the right to bring a citizens suit based on an alleged violation of the conditions of a § 404 permit, Plaintiff does have the right to bring an action under the APA challenging the validity of a § 404 permit").  However, the Court need not decide that issue, because even if a private right of action against a private defendant for alleged violations of the terms or conditions of a § 404 permit were among the types of citizens suits permitted by 33 U.S.C. § 1365(a), there is no indication that Plaintiff complied with the sixty-day notice provision in 33 U.S.C. § 1365(b).  Accordingly, Plaintiff's Ninth Cause of Action must be dismissed to the extent Plaintiff alleges that Mills/Mack-Cali has failed to satisfy a condition of the Permit.

Further, to the extent that Plaintiff's Ninth Cause of Action alleges that the transfer of the Empire Tract is inconsistent with the stated statutory laws or public policy of the State of New

21

Jersey or that "there is no 'meeting of the minds'" between Mills/Mack-Cali and the Conservation Trust, Plaintiff advances claims premised upon laws of the State of New Jersey. (*See* Compl. ¶¶ 152-62). Because the Court has already dismissed all claims supporting the Court's original, federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims to the extent brought pursuant to state law.

Section 1367 enables a federal court to consider claims premised upon state law over which no independent basis of federal jurisdiction exists. District courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As discussed above, all of Plaintiff's federal claims have been dismissed. This Court's original jurisdiction was based on federal question pursuant to 28 U.S.C. § 1331. No other basis for jurisdiction appears to exist.[8] To the extent Plaintiff's Ninth Cause of Action is premised upon state law, it is dismissed. See 28 U.S.C. 1367(c)(3); *Kohn v. AT&T Corp.*, 58 F. Supp. 2d 393, 421-22; *Eckhaus v. Consolidated Rail Corp.*, No. 00-5748 (WGB), 2003 WL 23205042, at * 16 (D.N.J. Dec. 24, 2003).

## IV. CONCLUSION

For the reasons expressed above, with respect to Plaintiff's First through Eighth Causes of Action, Plaintiff has failed to establish that the interests it seeks to protect are arguably within

---

[8] Because Plaintiff and some of Defendants are citizens of New Jersey, diversity jurisdiction is lacking. *See* 28 U.S.C. § 1332; Compl. ¶¶ 3-7, 8.

the zones of interests to be protected or regulated by the federal statutes in question.   Plaintiff

therefore lacks prudential standing to assert the alleged violations of those statutes and Plaintiff's

First through Eighth Causes of Action consequently must be dismissed.   Further, for the reasons

discussed above, Plaintiff's Ninth Cause of Action must be dismissed because, to the extent that

it seeks to enforce the terms of the Permit, Plaintiff cannot proceed under 33 U.S.C. § 1365, and,

to the extent it challenges the transfer of the Empire Tract to the Conservation Trust, it is

premised upon state law and the Court exercises its discretion to decline to exercise supplemental

jurisdiction to consider it.   Accordingly, Plaintiff's Complaint is dismissed with prejudice and

this case is closed.   An appropriate order will follow.

s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

DATED:  February 7, 2006

23